IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:11cv332

| | |
|---|---|
| AMERICAN AUTOMOBILE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )    MEMORANDUM AND )    RECOMMENDATION |
| HOWARD JACOBS, et al., | ) ) |
| Defendants. | ) ) |

Pending before the Court is Defendant's Motion to Dismiss [# 26]. Plaintiff brought this declaratory judgment action seeking a declaration from the Court that it has no obligation to indemnify Defendant Jacobs under two homeowner insurance policies. Defendant Jacobs moves to dismiss this case for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. The Court **RECOMMENDS** that the District Court **DENY** the motion [# 26].

I.    Background

Plaintiff American Automobile Insurance Company is a Missouri corporation with its principal place of business in California. (Pl.'s Compl. ¶ 2.) Plaintiff issued two personal homeowner insurance polices to Defendant Howard Jacobs, a wealthy real estate developer, to cover the premises and contents at 3483

Cummings Road, Hendersonville, North Carolina.[1] (Id. ¶¶ 6, 12; Ex. B to Pl.'s Compl.) These policies were issued in accordance with North Carolina law to cover property located in North Carolina, and they contain North Carolina choice of law provisions. (Ex. B to Pl.'s Compl.) Although Defendant Jacobs maintained his primary residence in Florida (Jacobs Aff. ¶ 3, Mar. 8, 2012), he spent at least four and a half months a year living in North Carolina at 3483 Cummings Road (Id. ¶¶ 22-23).[2]

Defendant Jacobs developed a multi-million dollar residence in Florida. (Pl.'s Compl. ¶ 13.) Although Defendant was in North Carolina during much of the construction of the Florida residence, he was able to check on the progress of the construction by video taken on the scene in Florida, as well as by email and phone. (Jacobs Dep. 106:24-107:6, 166:25-167:5, 210:19-25, 215:1-1-4, 226:11-20.) On September 19, 2009, prior to the completion of the construction of the

---

[1] Although the Complaint alleges that the polices cover 3482 Cummings Road (Pl.'s Compl. ¶ 6), it appears that this was a clerical error as the relevant insurance polices list 3483 Cummings Road as the covered property (Ex. B to Pl.'s Compl.).

[2] Although Defendant Jacobs states in his affidavit that he lived in North Carolina approximately four and a half months out of the year (Jacobs Aff. ¶ 23), he also testified that "for the vast majority of the first 13 months of construction [of the house in Florida] I was in North Carolina (Jacobs Dep. 342:23-24, Nov. 10, 2011). The Court reminds counsel of their obligations under Rule 11 of the Federal Rules of Civil Procedure. If the Court later determines that the statements of Defendant Jacob in the affidavit were false, the Court will take appropriate actions against Defendant Jacob and/or his attorneys. At this point, the Court will give Defendant Jacob the benefit of the doubt as it is not pertinent to the personal jurisdiction issue whether he lived in North Carolina four and a half months a year or the vast majority of a thirteen month period.

residence on the property, Defendant James Armour entered into a sales contract with Defendant Jacobs for the purchase of the Florida residence. (Id. ¶ 16.) In order to avoid or limit his taxes on the sale of the Florida residence, Defendant Jacobs created Defendant 4449 Holdings, LLC on October 2, 2008; the next day he transferred his interest in the residence to Defendant 4449 Holdings. (Id. ¶¶ 18, 22, 26.) Defendant Jacobs was the only member of Defendant 4449 Holdings. (Id. ¶ 18.) The same day Defendant Jacobs transferred the Florida residence to Defendant 4449 Holdings, he assigned his interest in Defendant 4449 Holdings to a bank that was acting as trustee for a trust whose sole beneficiary was Maryann Armour. (Id. ¶¶ 19, 23.) On June 18, 2009, Defendant Armour became the manager of Defendant 4449 Holdings. (Id. ¶ 25.)

Subsequently, Defendant Armour filed a petition for arbitration against Defendants Jacobs and 4499 Holdings alleging numerous construction defects at the Florida residence. (Id. ¶¶ 27-28.) The petition asserts claims for breach of contract, negligent misrepresentation, breach of duty to disclose, and "Johnson v. Davis." (Id. ¶ 29.) Defendant Armour contends that Defendant Jacobs was aware of the construction defects at the time the ownership of the Florida property was transferred to 4449 Holdings and seeks damages in excess of $1 million from Defendant Jacobs. (Id. ¶¶ 30-31.) In fact, the demand for arbitration lists the

value of the claim at $12 million. (Ex. G. to Pl.'s Resp. Mot. Dismiss.) The expert summary disclosure list damages in excess of $46 million. (Ex. H. to Pl.'s Resp. Mot. Dismiss.) Defendant Jacobs requested that Plaintiff provide a defense to him in the arbitration proceeding and indemnify him for any damages pursuant to the terms of his homeowners policies on the 3483 Cummings Road residence in North Carolina. (Pl.'s Compl. ¶ 32.) Currently, Plaintiff is providing a defense to Defendant Jacobs in the arbitration proceeding under a complete reservation of rights. (Id. ¶ 33.)

Plaintiff then brought this action seeking a declaration that it has no obligation to indemnify Defendant Jacobs for damages assessed in connection with the arbitration under the two insurance polices it issued. Defendant Jacobs now moves to dismiss the Complaint on the grounds that the Court lacks personal jurisdiction over him, lacks subject matter jurisdiction over this dispute, and that venue is not proper in this Court. Defendant's motion is now properly before the Court for a Memorandum and Recommendation to the District Court.

**II.    Analysis**

**A.    This Court has Subject Matter Jurisdiction over this Dispute**

The Federal Declaratory Judgment Act (the "Act") provides that a federal district court "may declare the rights and other legal relations of any interested

party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act, however, does not provide an independent basis for federal jurisdiction. City Nat'l Bank v. Edmisten, 681 F.2d 942, 945 n.6 (4th Cir. 1982). Accordingly, Plaintiff relies on the Court's diversity jurisdiction conferred under 28 U.S.C. § 1332 to provide the basis of federal jurisdiction in this Court.

Diversity jurisdiction has to two general requirements - diversity of citizenship and amount in controversy. 28 U.S.C. § 1332. Defendant Jacobs contends that this case fails to satisfy the amount in controversy requirement because it does not involve a claim in excess of $75,000. In contrast to the assertion of Defendant Jacobs, the record plainly reflects that the amount in controversy satisfies the jurisdictional requirement of Section 1332.

Generally, the sum claimed by a plaintiff in the complaint controls the amount in controversy determination. JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010). "If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." Id. (internal quotations and citation omitted). As the United States Court of Appeals for the Fourth Circuit has explained:

> Defendants, seeking dismissal of diversity actions for lack of a sufficient amount in controversy, must therefore shoulder a heavy burden. They

must show "the legal impossibility of recovery" to be "so certain as virtually to negative the plaintiff's good faith in asserting the claim." Wiggins v. N. Am. Equitable Life Assurance Co., 644 F.2d 1014, 1017 (4th Cir.1981) (internal quotation omitted). A mere dispute over the mathematical accuracy of a plaintiff's damages calculation does not constitute such a showing. See McDonald v. Patton, 240 F.2d 424, 425 (4th Cir.1957) (noting that plaintiffs may secure federal jurisdiction even when "it is apparent on the face of the claim" that the claim to the requisite amount is subject to a "valid defense").

Id.[3]

In declaratory judgment actions "the amount in controversy is measured by the value of the object of the litigation." Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347, 97 S. Ct. 2434, 2443 (1997). Where a party seeks a declaratory judgment determining the application of an insurance policy to a particular occurrence, the object of the litigation is not the policy limit but, rather, the value of the underlying claim. 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3710 (4th ed. 2011); Hartford Ins. Group v. Lou-Con Inc., 293 F.3d 908, 911 (5th Cir. 2002); Darbet,

---

[3] The preponderance of the evidence standard cited by Defendant Jacobs in his Motion to Dismiss (Def.'s Br. Support Mot. Dismiss at p. 15) is the standard applicable to cases involving the *removal* of a case from state court, not cases originally brought in federal court and, thus, has no application to this case. See Momin v. Maggiemoo's Intern., L.L.C., 205 F. Supp. 2d 506, 509 (D. Md. 2002); Gwyn v. Wal-Mart Stores, Inc., 955 F. Supp. 44, 45-56 (M.D.N.C. 1997); Pigg v. Progressive Cas. Inc. Co., No. 3:06cv125-H, 2006 WL 1789145, at * 2-3 (W.D.N.C. Jun. 27, 2006).

Inc. v. Bituminous Cas. Corp., 792 F. Supp. 487, 489 (S.D. W. Va. 1992).[4]
"Where the insured does not seek to recover the maximum under the policy, the court cannot rely exclusively on the policy limit as the measure of the amount in controversy." Allstate Ins. Co. v. Brown, 736 F. Supp. 705, 707 (W.D. Va. 1990). To hold otherwise would essentially federalize any action involving an insurance policy with policy limits greater than $75,000.00, regardless of the actual claim asserted by the insured or the value of such a claim. Accordingly, the pertinent question for the Court is not the value of the policy limit but the value to the parties of the underlying arbitration regarding the construction of the residence in Florida.

The Complaint alleges that the amount in controversy is greater than $75,000.00. (Pl.'s Compl. ¶¶ 7-8, 10.) In fact, the Complaint alleges that Defendant Armour seeks damages in excess of $1 million from Defendant Jacobs. (Id. ¶ 31.) In addition, the Complaint alleges that Defendant Jacobs has sought indemnity for any such damages from Plaintiff. (Id. ¶ 32.) The Complaint also alleges that the insurance polices at issue have limits far in excess of $75,000.00. (Id. ¶¶ 36, 63.) Such allegations are more than sufficient to satisfy Plaintiff's pleading requirements because the Complaint plainly alleges that the value of the

---

[4] In contrast, where a party seeks a declaratory judgment that an insurance policy is void, the amount in controversy is the face value of the policy. Wright, Miller & Cooper, supra § 3710.

underlying claim to Plaintiff and Defendant Jacobs is in excess of $75,000.00.

Moreover, the evidence in the record supports Plaintiff's contention that the value of the arbitration claim vastly exceeds $75,000.00. The value of the arbitration claim made in the Demand for Arbitration is $12 million. (Ex. G to Pl.'s Resp. Mot. Dismiss.) The Expert Summary Disclosure prepared in connection with the arbitration proceeding list damages in excess of $46 million. (Ex. H to Pl.'s Resp. Mot. Dismiss.) Put simply, this Court cannot find to a legal certainty that the value of the arbitration claim is less than $75,000.00. See JTH Tax, 624 F.3d at 638.

Finally, the Court notes that Defendant Jacobs's argument that this case does not meet the amount in controversy requirement borders on the frivolous and comes close to running afoul of the requirements of Rule 11. Counsel for Defendant Jacobs was well aware at the time of filing the Motion to Dismiss that the value of the underlying claim at issue was far in excess of $75,000.00, that this case did in fact satisfy the amount in controversy requirement, and that the Complaint plainly and clearly alleged factual allegations supporting the jurisdictional amount. Despite these facts, counsel chose to file this Motion to Dismiss making the argument that the amount in controversy requirement was not satisfied in this case. Motions such as these waste the resources of the Court, delay

the resolution of cases on their merits, prevent the Court from using its resources to rule on actual legal disputes, and run counter the purpose behind the Federal Rules of Civil Procedure, which is to "secure the just, speedy, an inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Although counsel has a duty to zealously represent her client, as a member of the bar of this Court, she also has a duty of candor to the Court and a duty to conduct herself in a professional manner. See United States v. Rhynes, 218 F.3d 310, 318 (4th Cir. 2000) (explaining that lawyers are officers of the court and owe a duty of candor to the court). As the Fourth Circuit has explained, "a lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy." U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc., 64 F.3d 920, 925 (4th Cir. 1995). In the future, counsel should think twice before making such frivolous arguments to the Court as it may result in the imposition of sanctions against counsel and/or her client pursuant to Rule 11 of the Federal Rules of Civil Procedure. The Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 26] for lack of subject matter jurisdiction.

**B.    This Court has Personal Jurisdiction over Defendant Jacbobs**

A plaintiff bears the burden of proving that the Court has personal jurisdiction over a defendant by a preponderance of the evidence. New Wellington

Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). However, when the District Court rules on a defendant's Rule 12(b)(2) motion to dismiss without an evidentiary hearing, a plaintiff need only set forth a prima facie case that the Court has personal jurisdiction over the defendant. Id.; Mylan Labs., Inc. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). In determining whether a plaintiff has made this prima facie showing, the Court construes the allegations in the complaint in the light most favorable to the plaintiff and must resolve all factual disputes in favor of the plaintiff. New Wellington, 416 F.3d at 294; Mylan Labs., 2 F.3d at 60.

In order to determine whether Plaintiff has satisfied its burden, the Court must engage in a two step analysis. Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993); Vishay Intertechnology, Inc.v. Delta Int'l Corp., 696 F.2d 1062, 1064 (4th Cir. 1982). First, the Court must determine whether the exercise of jurisdiction over a nonresident defendant is authorized by North Carolina's long-arm statute. New Wellington, 416 F.3d at 294; Ellicott Mach., 995 F.2d at 477. Second, the Court considers whether the exercise of jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. New Wellington, 416 F.3d at 294; Ellicott Mach., 995 F.2d at 477. Because the North Carolina Supreme Court has interpreted the state's

long-arm statute to reach the constitutional limits of due process, Dillon v. Numismatic Funding Corp., 231 S.E.2d 629, 630-31 (N.C. 1977), courts have compressed this two-step inquiry into a single inquiry, see CEM Corp. v. Personal Chemistry, 55 F. App'x 621, 623 (4th Cir. 2003) (unpublished); Gen. Latex and Chem. Corp. v. Phoenix Med. Tech., Inc. 765 F. Supp. 1246, 1249 n.1 (W.D.N.C. 1991) (Potter, J.); Shinn v. Greeness, 218 F.R.D. 478, 481 (M.D.N.C. 2003).

The cornerstone of an analysis as to whether the exercise of personal jurisdiction over a defendant comports with due process is whether the defendant purposefully established minimal contacts with North Carolina. Ellicott Mach., 995 F.2d at 477. "Minimal contacts exists where the defendant purposefully directs its activities toward the resident of the forum." Id. (internal quotations and citation omitted); Lesnick v. Hollingsworth & Vose Co., 35 F. 3d 939, 945 (4th Cir. 1994).

Minimal contacts alone, however, are insufficient to satisfy due process. Ellicott Mach., 995 F.2d at 477. The exercise of jurisdiction over a defendant must also conform to the concepts of fair play and substantial justice. Id.; Lesnick, 35 F.3d at 945. "In other words, once it has been decided that a defendant purposefully established minimal contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of

personal jurisdiction would comport with fair play and substantial justice." Ellicott Mach., 995 F.2d at 477 (internal quotations and citation omitted). The Fourth Circuit has set forth a number of the factors to aid lower courts in making such a determination, including: "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies." Lesnick, 35 F.3d at 946; see also Regent Lighting Corp. v. Galaxy Elec. Mfr., Inc., 933 F. Supp. 507, 510 (M.D.N.C. 1996).

Although Defendant Jacobs contends that the Court lacks personal jurisdiction over him because he maintains his permanent home and domicile in Florida, the allegations in the Complaint set forth a prima facie case of personal jurisdiction over Defendant Jacobs. Defendant Jacobs took out two homeowners insurance policies on a home in North Carolina where he lived for at least four and a half months out of the year. Not only did Defendant Jacobs live in North Carolina for extended periods of time, but he oversaw the construction of the Florida residence at issue from this North Carolina residence and conducted his business from North Carolina. In fact, Defendant Jacobs stated that he was in North Carolina for the "vast majority of the first 13 months of construction" of the

Florida residence. (Jacobs Dep. 342:23-24.) In short, Defendant Jacobs has purposefully established the necessary minimal contacts with North Carolina necessary for this Court to exercise personal jurisdiction over him, regardless of the fact that he maintains his permanent home in Florida. See Ellicott Mach., 995 F.2d at 477. Moreover, the exercise of jurisdiction over Defendant Jacobs does not conflict with the concept of fair play and substantial justice. See id. Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 26] for lack of personal jurisdiction.

### C. Venue in this Court is Proper

Pursuant to 28 U.S.C. § 1391, venue is proper: (1) in a district where any defendant resides if all the defendants reside in the state where the district is located, (2) in a district where a substantial part of the events giving rise to the claim occurred or a substantial part of the property subject to the action is situated, or (3) if there is no district where the action may otherwise be brought, a district where any defendant is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(b). Defendant Jacobs contends that venue is improper in this Court because none of the Defendants reside in the Western District of North Carolina and a substantial part of the events giving rise to the dispute did not occur in this district. In contrast, Plaintiff contends that venue is proper because a substantial part of the

events occurred in this district and Defendant Jacobs is a resident of North Carolina for purposes of determining venue.

As a threshold matter, Plaintiff's contention that Defendant Jacobs resides in North Carolina for purposes of venue is without merit. Although Defendant Jacobs spends part of the year in North Carolina, his permanent residence and domicile are in Florida. Moreover, Defendant Jacobs is a citizen of Florida. The view of the majority of federal courts is that residence for purposes of determining venue is synonymous with a party's citizenship for jurisdictional purposes. 14D Charles Alan Wright, Arthur R. Miller, Edwards H. Cooper, Joan E. Steinman, Catherine T. Struve, & Vikram David Amar, Federal Practice and Procedure § 3805 (3d ed. 2007). "The consequences of the majority view is that a person who has a home in one district but has retained his legal domicile, and thus his citizenship, in another state or district, cannot be sued in the district in which the person has his or her home." Id. "It is well settled that an individual's mere residence in a state is not enough for purposes of establishing the propriety of venue there. Rather, it is the individual's 'permanent' residence-i.e., his domicile-that is the benchmark for determining proper venue." Manley v. Engram, 755 F.2d 1463, 1466 n.3 (11th Cir. 1985); see also Koh v. Mircroteck Int'l, Inc., 250 F. Supp. 2d 627, 634 (E.D. Va. 2003) ("residence for venue purposes is the place of permanent residence or

legal domicile, not where they may otherwise establish ties or occasionally work or visit."); Union Planters Bank, N.A. v. EMC Mortgage Corp., 67 F. Supp. 2d 915, 918 n.4 (W.D. Tenn. 1999) ("A natural person is defined to reside in the district where he has his domicile or permanent home."); Miller v. Prof'l Transp., Inc., No. 09-2152-JWL, 2009 WL 2601132, at *2 (D. Kan. Aug. 24, 2009). In fact, after Plaintiff brought this action, Congress amended Section 1391 to specifically provide that residence for purposes of venue is the same as domicile. See 28 U.S.C. § 1391(c)(1) ("a natural person . . . shall be deemed to reside in the judicial district in which that person is domiciled.").

Defendant Jacobs is a citizen of Florida and is domiciled in Florida. Thus, for purposes of venue, he is also a resident of Florida. In contrast to Plaintiff's contention to the contrary, Defendant Jacobs may not be a resident of North Carolina for purposes of venue while simultaneously being domiciled in Florida and a citizen of Florida. See Wright, Miller, Cooper, Steinman, Struve & Amar, supra § 3805. Finally, Plaintiff's reliance on North Carolina state court cases addressing the definition of residence under state law is misplaced as it is federal law, not state law, that controls how this Court is to interpret and apply a federal statue such as 28 U.S.C. § 1391. See e.g. Jaffe v. Dolan, 264 F. Supp. 845, 848 (E.D.N.Y. 1967) ("Venue, having been fixed by federal law, must be determined

by federal law."). In fact, the state cases cited by Plaintiff are not even addressing residence in the context of the venue statute. See Matter of Ordinance of Annexation No. 1977-4, 249 S.E.2d 698, 706 (N.C. 1978) (addressing the definition of residence in the context of annexation); Vinson Realty Co., Inc. v. Honig, 362 S.E.2d 602, 603 (N.C. Ct. App. 1987) (discussing residence in the context of an order of attachment under state law). To rule, as Plaintiff suggest, that venue under a federal venue statute is proper in this Court because Defendant Jacobs is a resident of North Carolina, despite the wealth of federal law to the contrary, based on state law addressing the definition of residence in the context of annexation and an order of attachment would be a clear invitation for reversal from the District Court. The Court questions why such arguments were even presented to it.

Venue, however, is proper in this Court pursuant to Section 1391(b)(2), which provides that venue is proper in a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated. . . ." 28 U.S.C. § 1391(b)(2). As an initial matter, the Court recognizes that under Section 1391(b)(2), venue may be proper in more than one judicial district. Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004). The Fourth Circuit has instructed district courts that:

in determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action . . . Rather, it should review the entire sequence of events underlying the claim.

Id. (internal citations and quotations omitted).

This case involves the interpretation of two homeowners insurance policies on a home located in the Western District of North Carolina where Defendant Jacobs spent at least four months of the year. Although the underlying claim for which Defendant Jacobs seeks coverage under the policy involves the construction of a residence in Florida, Defendant Jacobs oversaw much of the construction of the home while he was living at the North Carolina property. As the Fourth Circuit has explained, venue under Section 1391(b)(2) is not a question of determining what is the one district where venue is proper. Id. Rather, venue can be proper in both the Western District of North Carolina and the Middle District of Florida. Accordingly, the Court finds that Plaintiff has made a prima facie showing that venue is proper in this Court. See id. ("To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue."). Accordingly the Court **RECOMMENDS** that District Court **DENY** the Motion to Dismiss [# 26] for improper venue.

## III. Conclusion

The Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 26].

Signed: September 27, 2012

Dennis L. Howell
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).